**INNER SECRETS/SECRETLY YOURS, INC., Plaintiff,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**Slip Op. 95–22.
Court No. 95–01–00044.**

United States Court of International Trade.

Feb. 14, 1995.

Ross & Hardies (Steven P. Kersner, Evelyn Suarez, Roger Banks and Stephen M. DeLuca), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Barbara Silver Williams); of counsel: Karen P. Binder, Gen. Atty., Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, for defendants.

## OPINION AND ORDER

TSOUCALAS, Judge:

Plaintiff, Inner Secrets/Secretly Yours, Inc. ("Inner Secrets"), an importer of women's undergarments from Hong Kong, moved pursuant to Rule 65(a) of the Rules of this Court for a preliminary injunction to enjoin the United States of America, the United States Customs Service ("Customs") and the Area Director, Customs Area Office, John F. Kennedy International Airport ("JFK Customs"), from preventing the release into the commerce of the United States of its imports, entry numbers 523–0246820–3, 523–0249962–0 and 523–0246885–6, and of its prospective imports of identical merchandise. Plaintiff sought injunctive relief pending a decision on the merits in its civil action challenging Customs' classification of its merchandise.

### Background

This case concerns several importations, as well as contemplated imports.

Plaintiff's first importation, entry number 523–0243288–6, consisting of 1,000 dozen boxer-style flannel garments, arrived on July 24, 1994. Plaintiff entered these garments under a quota category 352 visa as women's knitted cotton briefs and panties, subheading 6108.21.0010 of the Harmonized Tariff Schedule of the United States ("HTSUS"), dutiable at 8.1% *ad valorem*. *Memorandum in Support of Defendants' Opposition to Plaintiff's Application for Preliminary Injunction ("Defendants' Brief")* at 1.

Plaintiff's second importation, entry number 523–0243683–8 arrived on July 28, 1994. It consisted of 1,000 dozen items of identical merchandise and also entered under visa quota category 352.

Team 256 of JFK Customs handles Hong Kong-origin knitted apparel. The John F. Kennedy Team Leader/Field National Import Specialist ("Field National Import Specialist") requested samples from both entries. Customs examined these samples on July 27 and August 2, 1994. A determination ensued that the garments were manufactured of woven, rather than knitted fabric. Subsequently, Team 258, which handles woven apparel, determined that the garments were women's outerwear shorts rather than underwear. Accordingly, they fell under HTSUS subheading 6204.62.4055, were dutiable at 17.7% *ad valorem* and required a textile category 348 export visa. Team 258 detained the merchandise. According to the Field National Import Specialist, on or about July 28, 1994, she informed plaintiff of these developments. *Defendants' Brief* at 2. On July 29, 1994, plaintiff submitted further information to aid resolution of the classification question.

By affidavit, the Field National Import Specialist declared that on or about July 29th, she told plaintiff that the first entry would be released "conditionally," pending a review by the National Import Specialist, but that if an outerwear shorts classification was confirmed, Customs would issue Notices to Redeliver for failure to present the proper textile visa. *Field National Import Specialist's Affidavit* ¶ 9. Plaintiff claims that it was not told that the release of its merchandise was conditional pending a review. *Plaintiff's Brief* at 5. The date of entry and release of plaintiff's first two entries was on or about August 2, 1994.

Subsequently, the National Import Specialist confirmed that plaintiff's garments were classifiable as women's outerwear shorts, HTSUS subheading 6204.62.4055. As plaintiff's entries had not been liquidated, on September 9, 1994, Customs issued Notices to Redeliver.

According to plaintiff, its third importation, entry number not indicated, consisting of 1,400 dozen boxer-style garments, entered under visa quota category 352 and was released by Customs on August 30, 1994. *Inner Secrets' Affidavit* ¶ 7; *Plaintiff's Brief* at 3, 7. Customs' brief does not mention this import transaction.

According to plaintiff, after the release of its two initial imports and the August 30th importation, it was unaware that further investigation was being conducted. *Plaintiff's Brief* at 3, 7.

Additionally, plaintiff maintained that it imported an additional 3,568 dozen boxer-style garments, entry numbers 523–0249962–0, 523–0246820–3 and 523–0246885–6 on September 6 and 12, 1994. Two, or possible all three, of these importations entered under a quota category 352 visa as women's woven briefs and panties, HTSUS subheading 6208.91.3010, dutiable at 11.9% *ad valorem*. It is these three transactions which are the subject of this action. Regarding these three transactions, Commerce maintained that plaintiff's importation, warehouse entry number 523–0249962–0 [1] consisted of 2,042 dozen boxer-style garments, and was rejected on September 12, 1994 because the merchandise had previously been examined and determined to be outerwear, requiring a category 348 export license. Customs asserted that it also rejected plaintiff's entries number 523–0246820–3 and 523–0246885–6 on September 12th.

Plaintiff contended that it was after September 12th that it learned for the first time that the National Import Specialist was evaluating its merchandise. *Plaintiff's Brief* at 4–5.

According to plaintiff, prior to September 12th, it contracted with U.S. retailers for 55,293 dozen boxer-style garments and purchased 84,000 yards of flannel material for the overseas manufacture of these garments. Plaintiff values this undertaking at $2 million and maintains that, thus far, it has had to pay $9,600 in demurrage charges on the stored fabric. *Inner Secrets Affidavit* ¶¶ 10, 12.

On September 22, 1994, plaintiff met with officials at Customs Headquarters in an effort to resolve the classification question. A few days later, on September 29th, plaintiff filed an Internal Advice Request with Customs. The following month, on October 11th, Customs Headquarters responded by issuing an "Internal Advice ruling," which it labeled Headquarters Ruling Letter ("HRL") 957068. HRL 957068 noted that another Headquarters Ruling Letter, HRL 087940, contained seven criteria for distinguishing men's boxer shorts from non-underwear garments. A finding that a garment meets more than one of the criteria establishes a rebuttable presumption that the garment is outerwear. HRL 957068 stated that yet another Headquarters Ruling Letter, HRL 951754, had erroneously applied these criteria to determine the classification of women's flannel boxer-style shorts. Nevertheless, HRL 957068 utilized the seven criteria to classify plaintiff's merchandise because plaintiff had claimed that it had relied upon the criteria in entering its merchandise. Based on its finding that plaintiff's merchandise met two of the seven criteria, marketing and advertising information, news articles and judicial precedent, HRL 957068 determined that plaintiff's merchandise was classifiable as outerwear shorts.

HRL 957068 also noted that the seven criteria's utility was for making underwear/outerwear distinctions for classifying men's boxer shorts and stated that HRL 951754 would be modified to so indicate.

According to plaintiff, its garments meet only one of the seven criteria. *Plaintiff's Brief* at 13. Plaintiff also argues that Customs' classification is erroneous because Inner Secrets' business relates exclusively to undergarments, its Licensing Agreement is for intimate apparel, it markets and advertises its merchandise as underwear, and the industry treats its garments as underwear.

Plaintiff submits that Customs' actions violate section 623 of the Customs Modernization Act,[2] as amended, 19 U.S.C. § 1625(c)

---

1. Warehouse entry number 523–0249962–0 was previously identified as entry number 523–0247376–5.

2. On December 8, 1993, the President signed into law the North American Free Trade Agreement Implementation Act ("the Act"). *See* North American Free Trade Implementation Act,

Pub.L. No. 103–182, 107 Stat. 2186 (1993). Title VI of the Act, popularly known as the "Customs Modernization Act" (the "Mod Act"), amended numerous customs laws. In particular, section 623 of the Mod Act amended section 1625 of the Tariff Act of 1930, 19 U.S.C. § 1625 (1988), which pertains to publication of decisions.

(1988 & Supp. V 1993).[3] Specifically, plaintiff alleges that HRL 957068 modifies prior decisions and rulings which specify the criteria for determining the classification of women's boxers as underwear or outerwear and modifies Customs' prior treatment of substantially identical transactions without extending an opportunity for notice and comment.

Plaintiff also alleges that Customs has violated its due process rights. Essentially, plaintiff contends that it was not advised that Customs was continuing to investigate released merchandise and, in reliance on those releases, it undertook certain business commitments.

Plaintiff initially applied to this Court for a preliminary injunction on October 14, 1994. The Court dismissed that action for lack of subject matter jurisdiction as plaintiff had failed to exhaust available administrative remedies. *See Inner Secrets/Secretly Yours, Inc. v. United States*, 18 CIT ——, 869 F.Supp. 969 (1994).

On or about November 10, 1994, pursuant to 19 C.F.R. § 174.11 (1994), plaintiff protested Customs' denial of entry and classification of its merchandise under HTSUS 6204.62.4055. On December 7, 1994, pursuant to 19 C.F.R. § 174.21 (1994), plaintiff sought an expedited review of its protest. Customs denied plaintiff's protest on December 8, 1994.

Having exhausted administrative remedies, on January 13, 1995, plaintiff again applied to this Court for injunctive relief. On February 6, 1995, a full hearing was held to determine whether a preliminary injunction should issue. At culmination of oral argument, in a ruling from the bench, the Court found that plaintiff had failed to satisfy the requisite criteria for injunctive relief. The Court denied plaintiff's motion for a preliminary injunction and scheduled an expedited trial on the merits for March 1, 1995.

### *Discussion*

#### A. *Jurisdiction*

■ Plaintiff predicates jurisdiction on 28 U.S.C. § 1581(a) (1988). Generally, challenges to classification, valuation and entry of merchandise are reviewable pursuant to 28 U.S.C. § 1581(a) after the administrative remedies afforded by 19 U.S.C. §§ 1514 and 1515 (1988 & Supp. V 1993) have been exhausted. Therefore, with respect to merchandise which received a protest denial, plaintiff has properly predicated jurisdiction in this action on 28 U.S.C. § 1581(a).

#### B. *Preliminary Injunction*

■ In order for a preliminary injunction to issue, plaintiff must demonstrate: (1) that it has a likelihood of success on the merits; (2) that there is a threat of immediate and irreparable harm to plaintiff if relief is not granted; (3) that the balance of hardships to the parties favors issuance of the preliminary injunction; and (4) that the public interest would be better served by a grant of the relief requested. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir. 1983); *Timken Co. v. United States*, 11 CIT 504, 506, 666 F.Supp. 1558, 1559 (1987). "If any one of the requisite factors has not been established by plaintiffs, the motion for a preliminary injunction must be denied." *Trent Tube Div., Crucible Materials Corp. v. United States*, 14 CIT 587, 588, 744 F.Supp. 1177, 1179 (1990), *citing S.J. Stile Assocs. Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261,

---

3. **§ 1625. Interpretive rulings and decisions; public information**

....

**(c) Modification and revocation**

A proposed interpretive ruling or decision which would—
(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or
(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30–day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

646 F.2d 522, 525 (1981); *Budd Co. Wheel and Brake Div. v. United States,* 12 CIT 1020, 1022, 700 F.Supp. 35, 37 (1988).

*Threat of Immediate and Irreparable Harm*

■ At oral argument and in its brief and supporting documentation, plaintiff contended that Customs' actions threaten it with immediate and irreparable harm. *Plaintiff's Brief* at 1–26; *Plaintiff's Appendix.* Plaintiff asserted that its merchandise is highly seasonal and Customs' unlawful actions have caused it to lose one season due to unfulfilled orders. Plaintiff claimed that it is now unable to guarantee timely shipments for the 1995 fall and winter seasons. Plaintiff also maintained that if it does not fill orders by March 1995, its U.S. retail customers will seek other suppliers and plaintiff will lose millions of dollars in lost sales. Additionally, plaintiff contended that two of its U.S. accounts comprise 42% of its business. *Inner Secrets' Affidavit* ¶ 4. Plaintiff also argued that Customs' actions jeopardize its future business relations with U.S. retailers and threaten the job security of its 120 employees. Finally, plaintiff emphasized that it will be left without recourse on its losses as 28 U.S.C. § 2680(c) (1988) bars it from seeking monetary damages for Customs' misclassification.

The Court denied plaintiff's motion for a preliminary injunction on the basis that plaintiff had failed to establish a threat of immediate and irreparable harm if injunctive relief were not granted. Specifically, the Court based its decision on plaintiff's failure to provide any financial information showing that its financial solvency was dependent on a preliminary injunction. Plaintiff provided the Court with a single Licensing Agreement, effective January 1, 1994. It provided no evidence that contract losses or a damaged reputation as a reliable supplier will occur. It provided no dated contracts to support the contention that it undertook business commitments in reliance on Customs' release of its initial imports. Plaintiff also provided no evidence showing, proportionally, how much of its business with large U.S. retailers relates specifically to the subject merchandise. In addition, plaintiff provided no evidence showing how many of, or to what extent, its 120 employees work directly on the subject merchandise such that their job stability is jeopardized. Further, with regard to plaintiff's stored flannel fabric, plaintiff provided no evidence to show that it cannot utilize this fabric, either in the manufacture of boxer-style garments for sale to non-U.S. markets, or in the manufacture of other types of garments. Plaintiff stated merely, "[t]he only way to mitigate the loss would be to use the material to try to manufacture other flannel underwear items for which the company has underwear quotas. Even if that is done, however, there may be no market for such other items." *Inner Secrets' Affidavit* ¶ 10. The fact that plaintiff had not actually undertaken mitigation detracted from its irreparable harm argument.

Moreover, although plaintiff's initial imports were released, the imports were not liquidated. Therefore, plaintiff's reliance on the release of those imports as a basis for entering into business commitments was misplaced. The risk existed that, based on further developments, Customs could still challenge plaintiff's classification of unliquidated imports, seek their redelivery and compromise plaintiffs future sales commitments. Plaintiff accepted the risk of lost sales by entering into business commitments in the face of that contingency.

■ The court has stated that a preliminary injunction "will not issue simply to prevent a mere possibility of injury, even where prospective injury is great." *S.J. Stile Assocs.,* 68 CCPA at 30, 646 F.2d at 525. A preliminary injunction should be denied where irreparable injury is not demonstrated by probative evidence. *American Institute for Imported Steel v. United States,* 8 CIT 314, 318, 600 F.Supp. 204, 208–09 (1984); *see also American Spring Wire Corp. v. United States,* 7 CIT 2, 6, 578 F.Supp. 1405, 1408 (1984). Furthermore, with respect to expenses incurred in connection with the storage of plaintiff's fabric, in *S.J. Stile Assocs.,* the United States Court of Customs and Patent Appeals held that an increase in business expenses alone is not irreparable injury.

*S.J. Stile Assocs.,* 68 CCPA at 30, 646 F.2d at 526.

For the foregoing reasons, the Court found that plaintiff had failed in establishing that it was faced with a threat of immediate and irreparable harm to its business if injunctive relief was not granted.

### Conclusion

In sum, plaintiff did not persuade the Court that it would be threatened with immediate and irreparable harm if the extraordinary relief requested was not granted. Hence, the Court denied plaintiff's motion for a preliminary injunction and the Court had no need to consider whether its jurisdiction extended to plaintiff's prospective imports. An expedited trial on the merits is scheduled for March 1, 1995.

Motion denied.