**INNER SECRETS/SECRETLY YOURS, INC., Plaintiff,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**Court No. 95–01–00044.**
**Slip Op. No. 95–60.**

United States Court of International Trade.

April 10, 1995.

Ross & Hardies, Washington, DC (Steven P. Kersner, Roger Banks, Evelyn Suarez and Stephen M. DeLuca), for plaintiff.

Grunfeld, Desiderio, Lebowitz & Silverman, New York City (Steven P. Florsheim), Jacalyn E.S. Bennett & Co., amicus curiae in support of plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Barbara Silver Williams); Karen P. Binder, Gen. Atty., Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, DC, of counsel, for defendants.

## OPINION

TSOUCALAS, Judge:

This action comes before the Court after trial *de novo* on March 1, 1995. Plaintiff, Inner Secrets/Secretly Yours, Inc. ("Inner Secrets" or "Secretly Yours"), challenges the United States Customs Service's ("Customs") classification of plaintiff's merchandise in entry numbers 523–0246820–3, 523–0249962–0 and 523–0246885–6.

This case concerns women's woven cotton boxer-style shorts ("boxers"). The heart of the dispute is whether the subject garments are properly classifiable as "outerwear" under subheading 6204.62.4055 of the Harmonized Tariff Schedule of the United States ("HTSUS"), visa quota category 348, or as "underwear," 6208.91.3010,[1] HTSUS, visa quota category 352.

Plaintiff is an importer of women's undergarments from Hong Kong. *Amicus curiae*

---

1. In its complaint, Secretly Yours sought classification under HTSUS 6208.91.2010. Complaint ¶ 24. However, it sought relief under HTSUS 6208.91.3010. Complaint at 8.

in support of plaintiff in this action is Jacalyn E.S. Bennett & Company ("Amicus"). Amicus is an importer of various ladies underwear garments.

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## Background

The boxers at issue entered the United States via several importations. Plaintiff's first two importations, entry numbers 523–0243288–6 and 523–0243683–8, consisting of 2,000 dozen boxer-style garments, entered the United States in July 1994 under a 352 visa as women's knitted cotton briefs and panties, 6108.21.00, HTSUS, at 8.1% *ad valorem*. Complaint ¶ 5; Answer ¶¶ 5, 8; *Memorandum in Support of Defendants' Opposition to Plaintiff's Application for Preliminary Injunction* ("*Defendants' Opposition to Preliminary Injunction*") at 1.

Team 256 of John F. Kennedy Airport Customs ("JFK Customs") handles Hong Kong-origin knitted apparel. Shelley Thalrose, Team 256 Field National Import Specialist ("Field National Import Specialist"), examined samples from both entries. Concluding that the garments were manufactured of woven fabric, she transferred the merchandise to Team 258 which handles woven apparel. Subsequently, Team 258 determined that the garments were women's outerwear shorts, 6204.62.4055, HTSUS, subject to textile category 348. Team 258 detained the merchandise. *Defendants' Opposition to Preliminary Injunction* at 2.

By affidavit, Field National Import Specialist Shelley Thalrose declared that she informed plaintiff that, in her opinion and in Team 258's opinion, the subject boxers were classifiable as outerwear shorts. In addition, she stated that she told plaintiff that the first entry would be released "conditionally," pending a review by the National Import Specialist ("NIS"), but that if NIS confirmed an outerwear shorts classification, Customs would issue Notices to Redeliver for failure to present the proper visa. Plaintiff's Trial Exhibit 28, Affidavit of Shelley Thalrose ¶¶ 8,

9. The date of release of plaintiff's first two entries was August 3, 1994. Answer ¶ 8.

Subsequently NIS concurred that plaintiff's garments were classifiable as women's outerwear shorts, 6204.62.4055, HTSUS. As plaintiff's first two entries had not been liquidated, on September 9, 1994, Customs issued Notices to Redeliver. *Id.* at ¶ 11.

Plaintiff had additional importations of the subject merchandise which also entered under a 352 visa. On September 9, 1994, Customs demanded redelivery of plaintiff's entries 523–0243288–6 and 523–0243683. *Id.* On September 12, 1994, Customs rejected plaintiff's entry numbers 523–0247376–5 [2] and 523–0246820–3 for failure to present the proper visa. Customs also demanded redelivery of plaintiff's entry number 523–0246885–6 on September 13, 1994. *Id.*

On September 29th, plaintiff filed an internal advice request with Customs to resolve the classification question. On October 11, 1994, Customs Headquarters responded by issuing a Headquarters Ruling Letter ("HRL") 957068. Complaint and Answer ¶ 15. The ruling was adverse to plaintiff.

## HRL 957068

HRL 957068 noted that another ruling, HRL 087940, dated September 16, 1991, provided seven criteria for distinguishing men's boxer shorts from non-underwear garments. These criteria are:

1. Fabric weight greater than 4.2 ounces per square yard;

2. An enclosed or turned over waistband;

3. Lack of a fly or lining;

4. A single leg opening greater than the relaxed waist;

5. The presence of belt loops, inner or outer pockets or pouches;

6. Multiple snaps at the fly opening (not including the waistband), or button or zipper fly closures.

7. The side length of a size medium should not exceed 17 inches.

*Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction* ("*Plaintiff's Motion for Preliminary Injunc-*

---

**2.** This entry was later designated warehouse entry number 523–0249962–0.

*tion*"), Exhibit F at 3–4. According to Customs, no one feature is determinative and the presence of more than one of the above features gives rise to a rebuttable presumption that the garment under evaluation is not underwear. *Id.* at 4.

Customs' HRL 957068 noted that, although a June 25, 1992 ruling, HRL 951754,[3] had utilized the criteria set forth in HRL 087940 to determine the classification of 100% cotton flannel women's boxer-style shorts in a sleepwear versus outerwear classification question, HRL 951754 had erred because the criteria applied only to men's boxer-style garments. *Id.* Nevertheless, Customs evaluated the subject boxers according to the seven criteria because plaintiff had claimed to have detrimentally relied on HRL 951754. *Id.* Customs found that plaintiff's merchandise satisfied two of the seven criteria, i.e., they had a single leg opening greater than the relaxed waist and they lacked a fly. *Id.*

With respect to the "fly" criterion, Customs stated:

> The garment has a mock fly which, in essence, means it has no fly. The fly is not functional as it has been sewn at two points apparently in order to help the fabric lie flat. While women may have no need for a fly; the lack of a fly is one of the listed criteria.

*Id.* at 5.

HRL 957068 also emphasized that HRL 951754 would be modified to reflect the view that it was error to apply the criteria of HRL 087940 to women's garments. *Id.* at 4.

Having found that plaintiff's merchandise met two of the seven criteria, Customs concluded that the garments were presumptively outerwear shorts. Consequently, Customs found no basis for plaintiff's detrimental reliance claim. *Id.* at 5. In an assertive move, Customs rejected HRL 087940's application to women's boxer shorts for classification determinations. *Id.* Customs then proceeded to evaluate the subject merchandise anew based on tariff terms, basic tenets of classifi-

cation, and consideration of: judicial precedent; marketing and advertising information; the fact that the name of the garments identified them as "shorts"; the garment's physical characteristics, i.e., its fabric, design and construction (e.g., its bulkiness and looseness of fit); and information on fashion trends indicating that women, especially young women in plaintiff's targeted age group, principally wear boxer shorts as shorts to be seen, i.e., as outerwear. *Id.* 5–15.

Upon re-evaluation, Customs found that the subject boxers were properly classifiable as outerwear shorts, 6204.62.4055, HTSUS, subject to textile category 348, dutiable at 17.7% *ad valorem.* *Id.* at 15.

Plaintiff disagreed with Customs' ruling and applied to this Court for a preliminary injunction on October 14, 1994. The Court dismissed that action for lack of subject matter jurisdiction because of plaintiff's failure to exhaust administrative remedies. *See Inner Secrets/Secretly Yours, Inc. v. United States,* 18 CIT ——, 869 F.Supp. 959 (1994).

On November 10, 1994, pursuant to 19 U.S.C. §§ 1514, 1515 (1988 & Supp. V 1993), plaintiff filed timely protests of entry numbers 523–0249962–0, 523–0246885–6 and 523–0246820–3 with Customs. Plaintiff's protests were denied. *Defendant's Pretrial Memorandum of Law* ("*Defendant's Memorandum*") at 4.

Having exhausted administrative remedies, on January 13, 1995, plaintiff again applied to this Court for injunctive relief. On February 6, 1995, a full hearing was held to determine whether a preliminary injunction should issue. At culmination of oral argument, the Court ruled from the bench, finding that plaintiff had failed to satisfy the requisite criteria for injunctive relief.[4] Accordingly, the Court denied plaintiff's motion for a preliminary injunction but scheduled an expedited trial on the merits. Trial was held on March 1, 1995.

## Discussion

The central issue in this case concerns the proper tariff classification of certain women's

---

3. Plaintiff's Trial Exhibit 24.

4. The Court issued *Inner Secrets/Secretly Yours, Inc.,* 19 CIT ——, 876 F.Supp. 283 (1995), in accordance with its bench ruling.

woven cotton boxer-style shorts imported from Hong Kong by plaintiff. The boxers are manufactured of flannel fabric, in a plaid pattern, and have a weight of less than 4.2 ounces per square yard. They have a waistband which is not enclosed or turned over; a side length, of a size medium, not in excess of 17 inches; and two small nonfunctional buttons on the waistband above the fly. Two seams have been sewn horizontally across the fly, dividing the fly opening into thirds. The boxers do not have belt loops, inner or outer pockets or pouches, multiple snaps at the fly opening, or button or zipper fly closures.

The subject boxers are marketed under the label "No Excuses."[5]

*The HTSUS Classifications in Dispute*

The pertinent portion of the HTSUS propounded by plaintiff states:

6208 Women's or girl's singlets and other undershirts, slips, petticoats, *briefs, panties,* nightdresses, pajamas, negligees, bathrobes, dressing gowns *and similar articles:*

Other:

| | | |
|---|---|---|
| 6208.91 | Of cotton: | |
| 6208.91.30 | Other.......................... ...... | 11.9% |
| 6208.91.3010 | Women's....................... | (352) |

*Harmonized Tariff Schedule of the United States* (Supp. I 1994) (emphasis added).

The pertinent portion of the HTSUS which the defendant believes is applicable states:

6204 Women's or girl's suits, ensembles, suit-type jackets and blazers, dresses, skirts, divided skirts, trousers, bib and brace overalls, breeches and *shorts* ...:

Trousers, bib and brace overalls, breeches and shorts:

| | | |
|---|---|---|
| 6204.62 | Of Cotton: | |
| | Other | |
| | . . | |
| 6204.62.40 | Other..................... | 17.7% |
| | Shorts: | |
| 6204.62.4055 | Women's... ..... | (348) |

*Id.* (Emphasis added.)

Plaintiff claims that Customs' assigned classification is not supported by substantial evidence. *Plaintiff's Amended Pretrial Statement* at Count II. According to plaintiff, HRL 951754 extended the seven criteria of HRL 087940 to women's garments. *Id.* Plaintiff argues that the subject garments satisfy the sole criterion of having a single leg opening greater than the relaxed waist and are, therefore, presumptively underwear. *Plaintiff's Amended Pretrial Statement* at Count II; *Plaintiff's Motion for Preliminary Injunction* at 20.

In support of its preferred classification, plaintiff relies on various cases which set forth factors the courts have considered important in classification decisions. *Id.* Plaintiff argues that Customs' HRL 957068 is contrary to controlling judicial precedent. Plaintiff also points out that Canadian Customs, which uses the same tariff nomenclature as that of the United States, has classified identical merchandise as underwear. *Plaintiff's Motion for Preliminary Injunction* at 24 n. 9; Exhibit H: Canadian Ruling Letter (July 6, 1994) (sleep shorts with a fly front opening, with or without buttons, classifiable as underwear under 6108.91 to 6208.99, HTSUS).

In plaintiff's support, Amicus argues that, even if the subject boxers are not briefs or panties, they are "similar articles" by application of the rule of *ejusdem generis,* meaning "of the same kind," as that principle is set forth in *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1392 (Fed.Cir.1994). *Pre–Trial Memorandum of Amicus Curiae, Jacalyn E.S. Bennett & Company ("Amicus Memorandum")* at 11–12.

Amicus also argues that the subject boxers' flannel fabric has no bearing on their classification. For support, Amicus relies on *Hampco Apparel, Inc. v. United States,* 12 CIT 92, 95, 1988 WL 80014 (1988), where the Court dismissed the government's argument that twill fabric indicated a "shorts" classification because the fabric was heavier than normal swimwear fabric. In that case, the Court found that the twill fabric was a design and fashion factor and was the current "in" fabric for swimwear. *Amicus Memorandum*

---

5. Plaintiff also imports, under the "No Excuses" label, a string bikini panty and underwire brassi-
ere of plaid woven cotton flannel fabric which is identical to that of the subject boxers.

at 14–15. Amicus, claims that flannel is, increasingly, an "in" fabric, especially for winter garments. *Id.* at 15.

Lastly, citing *St. Eve Int'l, Inc. v. United States,* 11 CIT 224, 225, 1987 WL 8808 (1987), Amicus argues that the color and print of the subject boxers also have no bearing on classification. *Amicus Memorandum* at 15.

Customs disputes plaintiff's claim that the assigned classification is not sufficiently supported by evidence. Specifically, Customs first reiterates its finding that the subject boxers meet two of HRL 087940's criteria. *Id.* at 13. Second, Customs argues that the subject boxers do not fall under the HTSUS 6208 general terms "briefs, panties ... and similar articles" since they do not possess the essential characteristics or purposes that unite the articles *eo nomine,* i.e., under that name. *Id.* Customs believes that the boxers at issue are principally used as outerwear.

It is also plaintiff's position that Customs has violated Section 623 of the Customs Modernization Act,[6] as amended, 19 U.S.C. § 1625(c)(1) and (2) (1988 & Supp. V 1993).[7]

Specifically, plaintiff zealously argues that Customs modified prior rulings by either ignoring the seven criteria set forth in HRL 087940 and applied in HRL 951754, or by adding the new criterion of "a functional fly." *See* 19 U.S.C. § 1625(c)(1). *Plaintiff's Motion for Preliminary Injunction* at 12–16; *see also, Plaintiff's Amended Pretrial Statement* at Count I.

Plaintiff also argues that, in assigning the HTSUS classification in issue *after* the release of plaintiff's merchandise as entered, Customs improperly modified prior treatment of substantially identical transactions in violation of 19 U.S.C. § 1625(c)(2). Complaint ¶ 21; *Plaintiff's Motion for Preliminary Injunction* at 16–17. Additionally, plaintiff maintains that Customs' failure to apprise it that classification was still in question deprived plaintiff of the opportunity to alter its operations and was so fundamentally prejudicial as to amount to a deprivation of due process. Complaint ¶ 21; *Plaintiff's Motion for Preliminary Injunction* at 18–19. Plaintiff contends that, consequently, HRL 957068 is null and void and HRL 087940 must be held applicable to women's boxers until such time as Customs complies. *Plaintiff's Amended Pretrial Statement* at Count I; *Plaintiff's Motion for Preliminary Injunction* at 17.

*Classification of Plaintiff's Merchandise*

■ Pursuant to 28 U.S.C. § 2639(a)(1) (1988), tariff classifications made by Customs are presumed to be correct and the burden of proving that the assigned classification is erroneous is upon the challenging party. *See, e.g., Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). To determine whether the party challenging Customs' classification has overcome the statutory presumption of correctness, the Court must consider whether "the government's classification is correct, both independently and in comparison with the

---

6. On December 8, 1993, the President signed into law the North American Free Trade Agreement Implementation Act ("the Act"). *See* North American Free Trade Implementation Act, Pub.L. No. 103–182, 107 Stat. 2186 (1993). Title VI of the Act, popularly known as the "Customs Modernization Act" (the "Mod Act"), amended numerous Customs laws. In particular, section 623 of the Mod Act amended section 1625 of the Tariff Act of 1930, 19 U.S.C. § 1625 (1988), which pertains to publication of Customs decisions.

7. **§ 1625. Interpretive rulings and decisions; public information**

. . . .

**(c) Modification and revocation**

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30–day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir. 1984).

■ The Court finds that, based on the facts of this case, the boxers in issue are properly classifiable as underwear under 6208.91.3010, HTSUS.

The courts have delineated various considerations for ascertaining proper classification. For example, *St. Eve Int'l,* 11 CIT at 224, established that the "chief" use of a garment outweighs other uses for purposes of classification. *St. Eve Int'l* followed the standard established in *Mast Indus., Inc. v. United States,* 9 CIT 549, 553, 1985 WL 25786 (1985), *aff'd,* 786 F.2d 1144 (Fed.Cir. 1986), which based its decision in a shirts versus nightshirts classification question on an *in camera* inspection of the merchandise and a trial which established the design intention of the manufacturer and the methods by which the merchandise was marketed and advertised. Additionally, in *Hampco Apparel,* 12 CIT at 96, a swimwear versus shorts question, the Court found that, notwithstanding any fugitive use, classification is appropriate according to the garment's original and primary use, as dictated by its primary design, construction and function. Further, in the case of *United States v. Carborundum Co.,* 63 CCPA 98, 102 C.A.D. 1172, 536 F.2d 373, 377, *cert. denied, Carborundum Co. v. United States,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976), the appeals court set out the following classification considerations: the general physical characteristics of the merchandise; the expectations of the ultimate purchasers; the channels, class or kind of trade in which the merchandise moves; the environment of the sale and the manner in which the merchandise is advertised and displayed; the use, if any, in the same manner as merchandise which defines the class; the economic practicality of so using the import; and the recognition in the trade of this use.

During trial in the instant case, Field National Import Specialist Shelley Thalrose of JFK Customs defined a "fly" as an opening in the front of a garment, irrespective of whether the opening may also have buttons or a zipper. She then applied the seven criteria of HRL 087940, which are referenced in HRL 951754,[8] to plaintiff's Exhibits 1A and 1B.[9] She testified that plaintiff's Exhibit 1B had a fly but that Exhibit 1A lacked a fly because of the two lines of stitching sewn horizontally across the opening. She admitted that, in spite of the seams, one of the three open spaces in the fly created by the stitching was about the width of three of her fingers. She testified that Exhibit 1B met 6 of the 7 criteria and was presumptively underwear.

Customs' witness, Professor Gloria Hartley of the Fashion Institute of Technology and Parsons School of Design, an expert in garment product development, marketing and merchandising, and familiar with Customs' rules, also applied the seven criteria to plaintiff's Exhibits 1A and 1B. She also opined that Exhibit 1A lacked a fly but that Exhibit 1B had a fly. On cross-examination, she testified that boxer shorts could be underwear, that flannel boxers could be worn for warmth, and that not all panties have a crotch lining.

Lay witness, Fred Siegel, a principal in Secretly Yours for over ten years, also evaluated plaintiff's Exhibit 1A according to the criteria and opined that it had a fly. Mr. Siegel also testified that plaintiff's garments were designed as panty alternatives, intended to be worn against the body, and that plaintiff's boxer and panty coordinates were not designed to be worn together. Further, Mr. Siegel testified that, with some modification to the legs, the subject boxers were designed from the specifications for men's underwear.

Plaintiff's witness, Leona Siegel, an Account Executive for Inner Secrets/Secretly

---

**8.** Plaintiff's Trial Exhibit 24 at 3.

**9.** It is uncontroverted that Ms. Thalrose's expertise is in knitwear not woven garments, yet she had opined that plaintiff's initial imports were outerwear. Plaintiff's Trial Exhibit 28 ¶ 8.

Only plaintiff's Exhibit 1A is at issue in this case. This boxer-style garment has the two lines of stitching sewn horizontally across the fly, dividing the opening into thirds. Plaintiff's merchandise, Exhibit 1B, is also a pair of boxers but is not at issue. It has an unobstructed fly.

Yours and an expert in the design, manufacturing, marketing and sale of intimate apparel, opined that plaintiff's trial Exhibits 1A and 1B both had a fly and were underwear. She also testified that plaintiff's customers sell the subject boxers as underwear in their underwear departments and that plaintiff's Hong Kong manufacturer is an underwear company. In addition, she testified that plaintiff's showroom shares a location primarily with other lingerie showrooms and is located in New York City's lingerie district.

Plaintiff's witness, Kathleen Zirnhelt, Vice President and General Manager of intimate apparel for Gitano Fashion Industries, Ltd. ("Gitano"), an expert on intimate apparel, opined that plaintiff's Exhibits 1A and 1B were both underwear. She based her opinion on the garments' shape, comfort waistband, loose stitching and covered seams. In addition, Ms. Zirnhelt testified that garments bought as intimate apparel are generally worn as intimate apparel. To show how the subject boxers are perceived by the intimate apparel industry, she testified that Gitano would not market the subject boxers as outerwear. With the same objective, plaintiff offered the expert testimony of Michael Mandelbaum, an intimate apparel buyer for over 150 retail stores which sell intimate apparel and outerwear. Mr. Mandelbaum, who is also experienced in designing intimate apparel in collaboration with designers, opined that the subject boxers are underwear and should be ticketed as lingerie and displayed in lingerie departments. He based his opinion on the garment's design, softness, waistband and stitching.

Plaintiff exhibited the practicality of using the imported merchandise as underwear by having a professional model display a plaid kilt skirt worn over the subject boxers which were worn next to the skin, with knee high socks.

Further, plaintiff offered two photographs into evidence which, according to Leona Siegel, reflected that the boxers in issue was merchandised in the intimate apparel departments by plaintiff's retail customers. Plaintiff's Exhibit 2; see also, Plaintiff's Trial Exhibit 4.

To corroborate testimony, plaintiff also offered into evidence several purchase orders, which Leona Siegel identified as requests for quantities of the subject boxers from the intimate apparel department of one of plaintiff's retail customers. See Plaintiff's Trial Exhibit 4a. Plaintiff also offered into evidence various advertisements. Plaintiff's Trial Exhibit 8 showed that the subject boxers were marketed by one of plaintiff's retail customers in a manner which may be deemed to suggest that the garments are underwear. The garments were identified as "bra and panty coordinates." Additionally, plaintiff offered an ad from a major department store showing merchandise similar to the subject boxers marketed as lingerie. See Plaintiff's Trial Exhibit 9.

During direct examination, Professor Hartley testified that the current fashion trend is for women to wear men's boxer shorts as outerwear. She further testified that she had conducted a survey of 136 students, ages 14–28, to determine how they would use the subject boxers. She found that only one student would wear the boxers as underwear.

On cross-examination, Professor Hartley was questioned regarding the definition of "boxers" in *Fairchild's Dictionary of Fashion* 379, which states that boxers are "[w]omen's and children's loose-legged *panties styled like men's boxer shorts.*" Defendant's Trial Exhibit B (emphasis added). She testified that women's boxer shorts styled like men's boxer shorts could be panties. However, she disagreed with *Fairchild's Dictionary of Fashion* 412 (2d ed. 1988), that boxers are "[w]omen's and children's loose-legged *panties* of pull-on type." Plaintiff's Trial Exhibit 25 (emphasis added).

To counter plaintiff's documentary evidence, Customs proffered various catalog advertisements depicting boxers, similar to plaintiff's merchandise, in a context which suggested outerwear and loungewear or sleepwear usage. See Defendants' Trial Exhibit G1, G2 and G3. The similarity between the garments in Customs' exhibits and plaintiff's merchandise was mostly visual as plaintiff established that, with respect to Exhibits G1 and G2, details such as the absence or

presence of a fly, pockets or belt loops, and the fabric weight were not discernible by visual inspection.

Finally, much time was spent at trial by Customs in trying to show that the term "intimate apparel" encompasses apparel other than underwear and that plaintiff's licensing agreement for the "No Excuses" label is not limited to underwear. However, testimony elicited by Customs did not aid its position in any dispositive way.

Upon consideration of all of the proffered testimonial and documentary evidence introduced at trial, case law, and based on the Court's *in camera* evaluation of the subject merchandise, the Court agrees with plaintiff that the boxers in issue do not come within the classification of outerwear shorts.

The Court finds that a fly is one of the physical characteristics of the subject boxers. It was demonstrated at trial that the fly is not eliminated by the stitching across the fly's opening. Further, it was established that, according to Customs' own criteria, plaintiff's garments with a fly are presumptively underwear.

Furthermore, plaintiff's preferred classification is supported by evidence that the boxers in issue were designed to be worn as underwear and that such use is practical. In addition, plaintiff showed that the intimate apparel industry perceives and merchandises the boxers as underwear. While not dispositive, the manner in which plaintiff's garments are merchandised sheds light on what the industry perceives the merchandise to be. Plaintiff also established that it is considered an underwear resource, that the Hong Kong factory which manufactures its merchandise does not produce outerwear, and that its showroom is in an intimate apparel locale.

■ Further, evidence was provided that plaintiff's merchandise is marketed as underwear. While advertisements also are not dispositive as to correct classification under the HTSUS, they are probative of the way that the importer viewed the merchandise and of the market the importer was trying to reach. *Marubeni Am. Corp. v. United States*, 17 CIT ——, ——, 821 F.Supp. 1521, 1528 (1993), *aff'd*, 35 F.3d 530 (Fed.Cir.1994). In addition, while Professor Hartley's testimony regarding usage is credible, her survey's limited geographic scope diminishes its probative value regarding ultimate or chief use.

For the foregoing reasons, the Court finds that plaintiff has overcome the presumption of correctness which attaches to Customs' classifications. Therefore, the merchandise in issue is properly classifiable under 6208.91.3010, HTSUS, subject to visa quota category 352.

■ Moreover, the Court finds no merit to plaintiff's allegations concerning 19 U.S.C. § 1625(c)(1) and (2). Customs' HRL 957068 explicitly stated, HRL 951754 "will be modified." Customs' HRL 957068 found that plaintiff's merchandise met two of the criteria and bolstered that finding with further support to counter rebuttal. *Plaintiff's Motion for Preliminary Injunction*, Exhibit F at 4–5. Therefore, it is manifestly clear that Customs did not ignore or modify the criteria of HRL 087940 and, therefore, the notice and comment requirements of 19 U.S.C. § 1625(c)(1) were not implicated.

■ In addition, although post-release decisions may modify classification, they are not unlawful. Precedential significance attaches to final, binding liquidation, not to releases. 19 U.S.C. § 1514 (1988) and 19 C.F.R. § 141.113 (1994).[10] The Court recog-

10. Pursuant to 19 U.S.C. § 1514, liquidations are "final and conclusive" unless protested. Accordingly, section 1514 explicitly enables the importer to rely upon the finality of liquidation. In addition, 19 C.F.R. § 141.113 provides:

**Recall of merchandise released from Customs custody.**

. . . .

(b) *Other merchandise not entitled to admission.* If at any time after entry the district director finds that any merchandise contained

in an importation is not entitled to admission into the commerce of the United States for any reason not enumerated in paragraph (a) of this section, he shall promptly demand the return to Customs custody of any such merchandise which has been released.

. . . .

(f) *Time limitation.* A demand for the return of merchandise to Customs custody shall not be made after the liquidation of the entry covering such merchandise has become final.

nized this critical distinction in its decision denying plaintiff's motion for a preliminary injunction. *See Inner Secrets/Secretly Yours,* 19 CIT at ——, 876 F.Supp. 283. In 876 F.Supp. 283, the Court dismissed plaintiff's irreparable injury claim noting that, notwithstanding the release of plaintiff's imports, the risk remained with plaintiff regarding future undertakings that, "based on further developments, Customs could still challenge plaintiff's classification of unliquidated imports" and "seek their redelivery." *Id.* at ——, 876 F.Supp. at 287. Therefore, Customs did not modify prior treatment of substantially identical transactions in violation of 19 U.S.C. § 1625(c)(2) or violate plaintiff's due process rights.

### Conclusion

For the reasons discussed above, the Court finds that plaintiff has overcome the presumption of correctness accorded Customs' classifications. Therefore, Customs' classification of plaintiff's boxer-style merchandise as outerwear shorts under 6204.62.4055, HTSUS, subject to textile category 348 is incorrect. Customs is instructed to enter the merchandise in issue under the classification 6208.91.3010, HTSUS, subject to visa quota category 352.

### JUDGMENT

This case having been duly submitted for decision following trial *de novo,* and the Court, after due deliberation, having rendered a decision herein; now, therefore, in accordance with said decision

**IT IS HEREBY ORDERED** that, as plaintiff has overcome the presumption of correctness afforded the United States Customs Service's ("Customs") classification of plaintiff's women's woven cotton boxer-style garments as outerwear shorts under 6204.62.4055, HTSUS, textile category 348, Customs is ordered to enter same under 6208.91.3010, HTSUS, visa quota category 352; and it is further

**ORDERED** that this case is dismissed.